UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMERICAN BUILDERS &
CONTRACTORS SUPPLY CO., INC. d/b/a
ABC SUPPLY CO, INC.,

      Plaintiff,      **DECISION AND ORDER**

    v.          6:20-CV-06302 EAW

CR1 CONTRACTINC, LLC and
CHRISTOPHER KARL RIDSDALE,

      Defendants.
_____

AMERICAN BUILDERS &
CONTRACTORS SUPPLY CO., INC. d/b/a
ABC SUPPLY CO, INC.,

      Plaintiff,
    v.          6:20-CV-06945 EAW

CHRISTOPHER KARL RIDSDALE,

      Defendant.
_____

## INTRODUCTION

Plaintiff American Builders & Contractors Supply Co., Inc. d/b/a ABC Supply Co., Inc. ("Plaintiff") commenced an action on May 8, 2020 (*Am. Builders & Contractors Supply Co., Inc. v. CR1 Contracting, LLC et al.*, No. 6:20-CV-6302, the "Initial Action") asserting claims to recover the price of goods, to recover the value of an account stated, and for unjust enrichment arising out of deliveries of construction materials to defendant

- 1 -

CR1 Contracting, LLC ("CR1") for which CR1 allegedly did not pay invoices governed by a credit agreement (the "Credit Agreement") that defendant Christopher Karl Ridsdale ("Ridsdale," collectively with CR1, "Defendants") personally guaranteed.  (Initial Action Dkt. 1).  After entry of default in the Initial Action, Plaintiff filed a subsequent action on November 8, 2020 (*Am. Builders & Contractors Supply Co., Inc. v. Ridsdale*, No. 6:20-CV-6945, the "Guarantor Action"), asserting a single claim of breach of personal guaranty against Ridsdale.  (Guarantor Action Dkt. 1).  Defendants have not appeared or filed answers in either action.

Currently before the Court are Plaintiff's motions for default judgment filed in each action.  (Initial Action Dkt. 11; Guarantor Action Dkt. 7).  For the reasons set forth below, Plaintiff's motion for default judgment in the Initial Action (Initial Action Dkt. 11) is granted as to the claim for the price of goods sold and otherwise denied without prejudice, Plaintiff's motion for default in the Guarantor Action (Guarantor Action Dkt. 7) is denied, and the Clerk of Court's entry of default in the Guarantor Action (Guarantor Action Dkt. 6) is vacated.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's complaints and motion papers and are accepted as true in light of Defendants' default.  *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.,* 699 F.3d 230, 234 (2d Cir. 2012) ("[A] party's

default is deemed to constitute a concession of all well pleaded allegations of liability. . . .").

Plaintiff, a Delaware corporation with its principal place of business in Beloit, Wisconsin, is a distributor of roofing supplies.   (Initial Action Dkt. 4 at ¶¶ 2, 11). Defendant CR1 is a general contractor in New York with none of its limited liability company members residents or citizens of Wisconsin or Delaware.   (*Id.* at ¶¶ 3, 8). Ridsdale, a resident of Rochester, New York, is the sole and managing member of CR1. (*Id.* at ¶¶ 4, 6, 13).  On March 12, 2013, CR1 executed a Credit Agreement (Initial Action Dkt. 4 at ¶ 14; Dkt. 4-1 at 2; Dkt. 11-3) with Plaintiff whereby CR1 agreed to pay invoices for materials received in accordance with the invoices' terms or incur a monthly late fee of 1.5 percent.  (Initial Action Dkt. 11-1 at 6, 9; Dkt. 11-3 at 4).  The Credit Agreement also states that "Buyer agrees to pay all costs of collection by Seller of any amounts due hereunder, including actual attorney's fees."  (Initial Action Dkt. 11-3 at 4).

In the Initial Action, Plaintiff alleges that CR1 and its designees accepted materials from August 2018 to March 2020 detailed in 71 invoices attached to the complaint (Initial Action Dkt. 4 at ¶¶ 17-24; Dkt. 4-3 at 2-71; Guarantor Action Dkt. 1-3 at 2-71) and motions for default (Initial Action Dkt. 11-5 at 2-71; Guarantor Action Dkt. 7-5 at 2-71).  These invoices and associated account statements (Initial Action Dkt. 4-2 at 2-3; Dkt. 11-4 at 2-3, Guarantor Action 1-2 at 2-3) detail transactions in which CR1 accepted delivery of construction materials and associated late charges totaling $98,529.62 for which neither

CR1 nor Ridsdale has paid.  (Initial Action Dkt. 4 at ¶¶ 17-30, Guarantor Action Dkt. 1 at ¶¶ 37-39).

## PROCEDURAL BACKGROUND

Plaintiff commenced the Initial Action on May 8, 2020, naming both CR1 and Ridsdale as defendants.  (Initial Action Dkt. 1).  Plaintiff alleges in the Initial Action that CR1 breached the Credit Agreement by failing to pay invoices for construction materials and asserts claims for price of goods sold and delivered pursuant to New York Uniform Commercial Code ("N.Y. U.C.C.") § 2-709(1), to recover the value of an account stated, and for unjust enrichment.  (Initial Action Dkt. 4 at ¶¶ 11-48).  Plaintiff further alleges in the Initial Action that Ridsdale is liable for the debt that CR1 incurred pursuant to the Credit Agreement that Ridsdale personally guaranteed.  (Initial Action Dkt. 4 at ¶¶ 15, 16, 31).

On May 13, 2020, the Court entered an order to show cause as to why the Initial Action should not be dismissed for failure to properly establish diversity of the parties pursuant to 28 U.S.C. § 1332.  (Initial Action Dkt. 3).  On May 26, 2020, Plaintiff filed the first amended complaint ("FAC").  (Initial Action Dkt. 4).  CR1 was served with the summons and complaint on May 26, 2020 through its general agent.  (Initial Action Dkt. 5).  Ridsdale was served by posting the summons and complaint at his last known address on May 30, 2020, and by mail to his last known address within 20 days of posting.  (Initial Action Dkt. 6); *see* Fed. R. Civ. P. 4(e)(1); N.Y. Civ. Prac. L. and R. ("CPLR") 308(4). Plaintiff served the FAC on CR1 by U.S. mail to its registered agent and on Ridsdale by U.S. mail to his last known address on May 27, 2020.  (Initial Action Dkt. 7).

Neither CR1 nor Ridsdale has filed an answer or otherwise appeared in the Initial Action.  On July 6, 2020, Plaintiff requested an entry of default as to both Defendants (Initial Action Dkt. 8), which the Clerk of Court entered on July 7, 2020 (Initial Action Dkt. 9).  Plaintiff then requested that the Clerk of Court enter a default judgment for a sum certain pursuant to Federal Rule of Civil Procedure 55(b)(1).  (Initial Action Dkt 10).  However, the Clerk of Court did not enter a default judgment for sum certain due to insufficient information to calculate a sum certain.

On November 5, 2020, Plaintiff filed the Guarantor Action against Ridsdale in his capacity as guarantor of CR1's Credit Agreement (Guarantor Action Dkt. 1), despite having named Ridsdale as a defendant in the Initial Action as guarantor of CR1's Credit Agreement (Initial Action Dkt. 4).  In the Guarantor Action, Plaintiff asserts a single claim against Ridsdale for breach of personal guaranty in light of CR1's failure to pay for goods and Ridsdale's refusal to satisfy CR1's debts.  (Guarantor Action Dkt. 1 at ¶¶ 38-40).  In the Guarantor Action, Plaintiff purportedly served the summons and complaint by affixing them to the door of Ridsdale's last known address on December 4, 2020, and mailing them to the last known address within 20 days.  (Guarantor Action Dkt. 4-1 at 2); *see* Fed. R. Civ. P. 4(e)(1); CPLR 308(4).  Ridsdale failed to file an answer or otherwise appear in the Guarantor Action.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i).

Plaintiff filed a motion for default judgment in the Initial Action on November 19, 2020.  (Initial Action Dkt. 11).  The motion and supporting papers were served on CR1 through its registered agent and Ridsdale at his last known address.  (Initial Action Dkt.

13-1 at 2). The Court ordered any papers in response to Plaintiff's motion due by December 22, 2020. (Initial Action Dkt. 12 at 4). Defendants filed no response to Plaintiff's motion for default judgment in the Initial Action.

On January 19, 2021, Plaintiff requested that the Clerk of Court enter a default against Ridsdale in the Guarantor Action. (Guarantor Action Dkt. 5). The Clerk of Court entered a default on the same day. (Guarantor Action Dkt. 6). Plaintiff then filed a motion for default judgment in the Guarantor Action against Ridsdale as guarantor of the Credit Agreement on February 2, 2021. (Guarantor Action Dkt. 7). The motion and supporting papers were served on Ridsdale at his last known address. (Guarantor Action Dkt. 9). Ridsdale failed to file a response by February 24, 2021, as required by the Court's Order. (*See* Guarantor Action Dkt. 8).

## DISCUSSION

### I.   Standard for Entry of Default Judgment

Federal Rule of Civil Procedure 55 sets forth the procedural steps for entry of a default judgment. First, a plaintiff must seek entry of default where a party against whom it seeks affirmative relief has failed to plead or defend in the action. Fed. R. Civ. P. 55(a). Plaintiff has obtained entry of default against the appropriate Defendants in the Initial Action and the Guarantor Action. (Initial Action Dkt. 9; Guarantor Action Dkt. 6). "Having obtained a default, a plaintiff must next seek a judgment by default under Rule 55(b)." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *see also* Fed. R. Civ. P. 55(b). "[A] party's default is deemed to constitute a concession of all well pleaded allegations of

liability. . . ." *Cement & Concrete Workers*, 699 F.3d at  234; *see also Philip Morris USA Inc. v. 5 Brothers Grocery Corp.*, No. 13-CV-2451 (DLI)(SMG), 2014 WL 3887515, at *2 (E.D.N.Y. Aug. 5, 2014) ("Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability." (citation omitted)).

"As the Second Circuit has noted, when determining whether to grant a default judgment, the Court is guided by the same factors which apply to a motion to set aside entry of default." *Krevat v. Burgers to Go, Inc.*, No. 13-CV-6258, 2014 WL 4638844, at *5 (E.D.N.Y. Sept. 16, 2014) (*citing Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001)). The three factors include: (1) "whether the defendant's default was willful"; (2) "whether the defendant has a meritorious defense to plaintiff's claims[;]" and (3) "the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Id.* "[P]rior to entering default judgment, a district court is required to determine whether the [plaintiff's] allegations establish the [defendant's liability] as a matter of law." *City of N. Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (internal quotations and citation omitted).  Ultimately, "[t]he decision whether to enter default judgment is committed to the district court's discretion." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015).

## II.   <u>Service of Process</u>

As a preliminary matter, "before a court grants a motion for default judgment, it must first assure itself that it has personal jurisdiction over the defendant." *Sinoying*

- 7 -

*Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).  "A default judgment may not be granted . . . if the defendant has not been effectively served with process."  *O'Callaghan v. Sifre*, 242 F.R.D. 69, 72 (S.D.N.Y. 2007) (collecting cases); *see also Happy Homes, LLC v. Jenerette-Snead*, No. 15-CV-01788 MKB RML, 2016 WL 6599826, at *3 n.10 (E.D.N.Y. Nov. 7, 2016) ("Ineffective service-of-process is a ground to deny a motion for default judgment.").  There is no question that CR1 was properly served through its general agent.  *See* Fed. R. Civ. P. 4(h)(1)(B); CPLR 311-a(a)(iii); (Initial Action Dkt. 5).  However, for the reasons set forth below, the Court finds that Ridsdale was not properly served in the Guarantor action.

Plaintiff served the summons and complaint on Ridsdale in both actions by posting them on the door at his last known address and mailing them to the address within 20 days. (Initial Action Dkt. 6; Guarantor Action Dkt. 4).  Rule 4(e)(1) provides that a plaintiff may serve an individual within a judicial district of the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).  In this case, Plaintiff opted to serve Ridsdale pursuant to CPLR 308(4), which provides that where service cannot be made under paragraphs (1) and (2) of CPLR 308, service may be made "by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business.

. . ." CPLR 308(4).  "New York courts hold that plaintiffs may only resort to the 'nail and mail' method of service described in [CPLR] § 308(4) 'where personal service under CPLR 308(1) and (2) cannot be made with due diligence.'"  *Jordan v. Pierre*, 18-cv-8528 (JGK), 2019 WL 2461721, at *1 (S.D.N.Y. May 28, 2019) (quoting *J.P. Morgan Chase Bank, N.A. v. Baldi*, 128 A.D.3d 777, 777 (2d Dep't 2015)).  "The due diligence requirement of CPLR 308(4) must be strictly observed, given the reduced likelihood that a summons served pursuant to that section will be received." *Id.* (quoting *O'Connell v. Post*, 27 A.D.3d 630, 631 (2d Dep't 2006)) (quotation marks omitted).

According to his affidavit, the process server in the Initial Action made six attempts to serve Ridsdale at his last known address before posting the summons and complaint on his door and mailing it to the address.  (Initial Action Dkt. 6).  The process server confirmed Ridsdale's address with a neighbor.  *Id.*  Based upon the efforts to serve Ridsdale at his home on six separate occasions at varying times of day, confirmation of his address with a neighbor, and confirmation that Ridsdale is not in active military service (Dkt. 6), Plaintiff exercised due diligence before resorting to "nail and mail" service pursuant to CPLR 308(4).  Accordingly, Ridsdale was properly served with the summons and complaint in the Initial Action.  *See JP Morgan Chase*, 127 A.D.3d at 777-78 (holding that three visits to the defendant's home, confirmation of residence with a neighbor, and unsuccessful attempt to ascertain employment address constituted due diligence warranting "nail and mail" service).

The same is not true of Plaintiff's efforts to serve Ridsdale in the Guarantor Action. Although the New York Court of Appeals has not established a clear rule defining "due diligence," courts have generally, at a minimum, required "three occasions when a working person might reasonably have been expected to be at home[.]" *Rodriguez v. Khamis*, 201 A.D.2d 715, 715 (2d Dep't 1994); *see Sartor v. Utica Taxi Center, Inc.*, 260 F. Supp. 2d 670, 675-76 (S.D.N.Y 2003) (collecting cases). Where attempts at serving process upon an individual are not sufficiently varied in time, New York courts have also required plaintiffs to attempt service at a defendant's place of employment. *See Sartor*, 260 F. Supp. 2d at 675-76 (collecting cases). In the Guarantor Action, the process server attempted in-person service at Ridsdale's address on three dates, all of which were weekdays, two of which were during business hours, and the third of which was at 6:03 p.m. (Guarantor Action 4-1 at 2). The process server did not attempt to ascertain or confirm an employment address or other address and did not confirm that the home at 89 Rutledge Drive was Ridsdale's residence. (*Id.*). Accordingly, the Court finds that Plaintiff did not exercise due diligence sufficient to warrant "nail and mail" service pursuant to CPLR 308(4) in the Guarantor Action. *See Sartor*, 260 F. Supp. 2d at 675-76; *see also Jordan*, 2019 WL 2461721, at *1 (collecting cases).

Because a plaintiff may only resort to "nail and mail" service "where service under paragraphs one and two [of CPLR 308] cannot be made with due diligence[,]" service pursuant to this provision was improper. CPLR 308(4). The Court cannot exercise personal jurisdiction over Ridsdale where he was not properly served, and entry of default

was improper.  *See Sinoying Logistics*, 619 F.3d at 213; *O'Callaghan*, 242 F.R.D at 72.

Therefore, the Court will vacate the Clerk of Court's entry against Ridsdale in the

Guarantor Action and deny Plaintiff's motion for default judgment in the Guarantor Action.

The Court accordingly proceeds to the merits solely of the motion for default judgment

filed in the Initial Action.

## III.   <u>Willfulness</u>

The Court's first inquiry is whether Defendants' default was willful.  In the Initial

Action, "[Defendants'] failure to appear, failure to respond to the Complaint, and failure

to respond to the instant motion sufficiently demonstrate willfulness."  *Krevat*, 2014 WL

4638844, at *6 (citation omitted); *see also S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d

Cir. 1998) ("willful" default found when "the conduct of counsel or the litigant was

egregious and was not satisfactorily explained," such as "for flimsy reasons, [failure] to

comply with scheduling orders," or failing to answer a complaint after evading service for

months); *Mason Tenders Dist. Council v. Duce Const. Corp.*, No.

02Civ.9044(LTS)(GWG), 2003 WL 1960584, at *2 (S.D.N.Y. April 25, 2003)

("Defendants, having failed to respond in any way to the Summons and Complaint or

otherwise make any appearance in this action and having failed to provide any explanation

for its failure to defend, have defaulted willfully.").

## IV.   <u>Meritorious Defenses</u>

The Court next considers whether CR1 and Ridsdale have meritorious defenses to

Plaintiff's claims in the Initial Action.  "A defense is meritorious if it is good at law so as

to give the factfinder some determination to make." *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (citation omitted).  "While a defendant need not establish his defense conclusively, he must 'present evidence of facts that, if proven at trial, would constitute a complete defense.'"  *Krevat*, 2014 WL 4638844, at *6 (citation omitted).

"[W]here a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment." *Id.*

> The fact that a complaint stands unanswered does not, however, suffice to establish liability on [the] claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading.  With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action.

*Said v. SBS Electronics, Inc.*, No. CV 08-3067(RJD)(JO), 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010); *see also Krevat*, 2014 WL 4638844, at *7 ("Even if a plaintiff's claims are deemed admitted, a plaintiff must demonstrate that the allegations set forth in the complaint state valid claims.").  Consequently, the Court must assess whether Plaintiff's allegations, accepted as true, demonstrate each Defendant's liability as to each of Plaintiff's causes of action.

### A.    Claim for the Price of Goods Sold and Delivered

Plaintiff's first cause of action in the Initial Action is to recover the price of goods sold and delivered pursuant to N.Y. U.C.C. § 2-709(1).[1]  (Initial Action Dkt. 4 at ¶¶ 33-36; Dkt. 11-1 at 3-4).  "Under the New York UCC, to recover on a claim for goods sold and delivered, a plaintiff must show that: (1) it had a contract with the buyer; (2) the buyer failed to pay the purchase price; and (3) the buyer accepted the goods."  *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc*., 952 F. Supp. 2d 542, 571 (S.D.N.Y. 2013) (citing *Weil v. Murray*, 161 F. Supp. 2d 250, 254-55 (S.D.N.Y. 2001); N.Y. U.C.C. § 2-709(1)).

Plaintiff alleges that CR1 entered into the Credit Agreement with Ridsdale as guarantor.  (Initial Action Dkt. 4 at ¶¶ 14-16).  As evidence of this agreement, Plaintiff submitted a single page of the Credit Agreement apparently bearing Ridsdale's signature as exhibit A appended to the FAC.  (Initial Action Dkt. 4-1).  This exhibit indicates an agreement with CR1 signed by Ridsdale with a section labeled "4. Guarantors sign here" also bearing Ridsdale's handwritten name and signature.  (*See id.* at 2).

In its motion for default judgment, Plaintiff includes a true and complete copy of the entire Credit Agreement.  (Initial Action Dkt. 11-2 at ¶ 4; Dkt. 11-3).  Generally, "[a]

---

[1]     Because it is sitting in diversity, the Court applies the substantive law of the forum state—here, New York.  *See Consorti v. Armstrong World Indus*., 72 F.3d 1003, 1011 (2d Cir. 1995) ("Since the landmark decision of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), it has been a hallmark of federalism that a federal court sitting in diversity, while using its own rules to govern procedural matters, will apply the substantive law of the forum state.").

default constitutes an admission of all well-pleaded factual allegations in the complaint[.]" *Ally Bank v. 1st Republic Mortg. Bankers, Inc.*, No. CV 09-247(ADS)(WDW), 2011 WL 10549045, at *1 (E.D.N.Y Dec. 7, 2011).  Further, "the Court may take notice of underlying documents relied upon in the complaint."  *Freeman v. Bianco*, No. 02 Civ. 7525(GEL), 2003 WL 179777, at *1 (S.D.N.Y. Jan. 24, 2003) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).   "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily on its terms and effect,' which renders the document 'integral' to the complaint."  *Chambers*, 282 F.3d at 153 (quoting *Int'l Audiotext v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

Although Plaintiff did not submit the full Credit Agreement in the FAC, the FAC relies heavily on the Credit Agreement's terms and effect and the FAC contains at least one page of the Credit Agreement bearing Ridsdale's signature on behalf of CR1 and as personal guarantor of the Credit Agreement.  (*See* Initial Action Dkt. 4-1; Dkt. 11-3).  Based on the allegations contained in the complaint and the Credit Agreement page bearing Ridsdale's signature, the Court concludes that although Plaintiff submitted the full Credit Agreement only with its motion for default judgment, its operative terms are sufficiently referenced within the FAC such that the Court may consider the entirety of the Credit Agreement in deciding Plaintiff's motion for default judgment.

The Court accepts the allegations in the FAC that Defendants have failed to pay for any goods received (Initial Action Dkt. 4 at ¶¶ 30-31), and that CR1 accepted the goods detailed in the invoices appended to the FAC, *see Cement & Concrete Workers*, 699 F.3d

at 234; (Initial Action Dkt. 4 at ¶¶ 24-26; Dkt. 4-3).  Additionally, the Court accepts as conceded that Defendants have not rejected any of the goods Plaintiff furnished.  (*See* Initial Action Dkt. 4 at ¶¶ 25-27).  These facts are sufficient to establish a violation of N.Y. U.C.C. § 2-709(1).  Therefore, Plaintiff is entitled to recover the price of the goods furnished to CR1, the amount of which is set forth in detail below.

### B.    Claim for Account Stated

In its complaint, Plaintiff asserted a claim for the value of an account stated against Defendants.  (Initial Action Dkt. 4 at ¶¶ 37-42).  However, Plaintiff neither briefs the claim for an account stated nor explicitly withdraws such claim in its motion for default judgment.  (*See* Initial Action Dkt. 11).  In the absence of any briefing on the claim for an account stated, the Court treats said claim as abandoned for purposes of the instant motion. *See, e.g., Daiuto v. Evolve Guest Controls, LLC*, No. 17-CV-1279 (NGG) (JO), 2020 WL 1466117, at *9 (E.D.N.Y. Mar. 4, 2020) ("[The plaintiff] wholly ignores the *prima facie* tort claim in his motion for default judgment.  He makes no effort either to show that the Amended Complaint's uncontested factual allegations suffice to establish liability for that cause of action or to prove any resulting damages.  I therefore conclude that [the plaintiff] has abandoned that claim.").

### C.    Claim for Unjust Enrichment

Plaintiff's third cause of action, unjust enrichment, fails because the subject matter of the claim is governed by a valid contract—namely, the Credit Agreement.  "A claim for unjust enrichment requires proof that (1) defendant was enriched, (2) at plaintiff's expense,

- 15 -

and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Pro. Merch. Advance Cap., LLC v. C Care Servs., LLC*, No. 13-cv-6562 (RJS), 2015 WL 4392081, at *6 (S.D.N.Y July 15, 2015) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)).  "Unjust enrichment lies as a quasi-contract claim that contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Cooper v. Anheuser-Busch, LLC*, 20-CV-7451 (KMK), 2021 WL 3501203, at *18 (S.D.N.Y. Aug. 9, 2021) (quotation marks omitted) (citing *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012)).  An unjust enrichment claim "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).  Importantly, under New York law, no unjust enrichment claim can survive where "there is a valid and enforceable written contract governing the subject matter." *2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assurance Co.*, 96 F. Supp. 3d 182, 234 (S.D.N.Y. 2015) (quotation and alteration omitted); *see also Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014) ("When a matter is controlled by contract, the plaintiff has no valid claim for unjust enrichment under New York law." (quotation omitted)).

Here, the Court has already determined that there was a valid contract—the Credit Agreement—between the parties.  Plaintiff's unjust enrichment claim does not assert distinct facts or damages from its action for the price of goods sold and delivered pursuant

to the Credit Agreement.  (*See* Initial Action Dkt. 4 ¶¶ 43-48; Dkt. 11-1 at 4-5).  Under these circumstances, Plaintiff has not demonstrated that it has a valid claim against Defendants for unjust enrichment.

## V.   <u>Prejudice</u>

The Court must next consider "the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Krevat*, 2014 WL 4638844, at *5.  It is clear that, given Defendants' failure to appear and refusal to pay the amounts owed pursuant to the Credit Agreement, Plaintiff is unlikely to recover pursuant to the Credit Agreement if the motion for default judgment is not granted.  Accordingly, all three factors considered militate in favor of granting default judgment on Plaintiff's claim for goods sold and delivered.  *See, e.g., Higueral Produce, Inc. v. CKF Produce Corp.*, No. 18-CV-6760-NGG-SJB, 2019 WL 5694079, at *9 (E.D.N.Y. Aug. 16, 2019) (finding prejudice element satisfied because the plaintiff would otherwise be unable to recover on claims adequately alleged in complaint).

## VI.   <u>Ridsdale's Personal Liability as Guarantor</u>

"[U]nder New York's Statute of Frauds, N.Y. Gen. Obl. L. § 5-701(a)(2), a party seeking to impose personal liability on a corporate agent who signs an agreement in a representative capacity must show that the agent had the clear and explicit intent to be bound under the Agreement."  *Integrated Mktg. and Promotional Sol., Inc. v. JEC Nutrition, LLC*, No. 06 Civ. 5640(JFK), 2006 WL 3627753, at *2 (S.D.N.Y Dec. 12, 2006). "To determine whether an agent's signature on an agreement complies with the Statute of

Frauds, courts of the Second Circuit focus on the intent of the agent to be bound." *Id.* (citing *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund, and Annuity Fund v. Lollo*, 35 F.3d 29 (2d Cir. 1994)).  Here, on the Credit Agreement's signature page, Ridsdale's signature and full printed name appear below the heading "4. Guarantors sign here[.]" (Initial Action Dkt. 4-1 at 2; Dkt. 11-3 at 3).  Further, the signature page makes it clear that guarantors agree to be "jointly, severally, and unconditionally" liable for any indebtedness incurred by CR1 (the "Buyer") and further agree to pay "all costs of collection, legal expenses and attorney's fees paid or incurred by [Plaintiff] in the collection of [CR1's] indebtedness and in enforcing this [personal guaranty]." (Initial Action Dkt. 4-1 at 2; Dkt. 11-3 at 3).  It is clear and explicit that Ridsdale intended to personally guarantee CR1's debts pursuant to the Credit Agreement. Therefore, Plaintiff may recover against Ridsdale personally for CR1's failure to pay for goods sold and delivered pursuant to the Credit Agreement.  *See Sony Music Entm't, Inc. v. Pedestal Prods.*, 01 Civ. 4033 (RLC)(FM), 2002 WL 1226861, at *7 (S.D.N.Y. Apr. 9, 2002) (granting default judgment against owner of corporation who had signed personal guaranty for corporation's nonpayment for goods sold and delivered).

**VII.** **Damages**

Although "a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992).  "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty."

*Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1992)).  "A court may make a damages determination upon a review of detailed affidavits and documentary evidence."  *Gov't Emp. Ins. Co. v. Erlikh*, 16-CV-7120-DLI-SJB, 2019 WL 1487576, at *24-25 (E.D.N.Y Feb. 28, 2019) (citing *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991)).

Plaintiff seeks payment for invoices totaling $75,146.80 that Plaintiff alleges have not been paid or have been partially paid.  (Initial Action Dkt. 4-3 at 2-71; Dkt. 11-5 at 2-71; Dkt. 11-9 at 4).  In addition, Plaintiff seeks pre-judgment interest at a rate of 1.5 percent, which at the time Plaintiff filed the motion for default judgment, Plaintiff calculated as $28,397.23; attorneys' fees in the amount of $3,450.00; and litigation costs in the amount of $146.60, for a total award of $107,140.43.

### A.  <u>Damages for Unpaid Invoices</u>

Accepting Plaintiff's allegations as conceded, the invoices submitted with the FAC and Plaintiff's motion for default judgment are sufficient to establish that Plaintiff is entitled to recover the amount of unpaid invoices totaling $75,146.80.  In particular, Plaintiff has submitted copies of the invoices and of CR1's account statement, as well as a sworn declaration from Plaintiff's National Debt Recovery Manager confirming that CR1 ordered and accepted the goods referenced in the invoices.  (Initial Action Dkt. 11-2; Dkt. 11-4; Dkt. 11-5; Dkt. 11-9); *see Oy Saimaa Lines Logistics, Ltd. v. Mozaica-New York,*

*Inc.*, 193 F.R.D. 87, 89 (E.D.N.Y. 2000) ("Plaintiff has provided the court with sufficient documentary proof regarding the damages it sustained.  First, plaintiff has submitted a declaration . . . stating that plaintiff performed the services described in the complaint and attaching a detailed list of those services with accompanying dates, prices, and invoice numbers.  In addition, plaintiff has submitted copies of all of the actual invoices plaintiff failed to pay." (citation omitted)).

### B.  **Prejudgment and Post-Judgment Interest**

Plaintiff also seeks prejudgment and post-judgment interest on the outstanding amounts owed at the 1.5 percent rate set in the Credit Agreement.  (Initial Action Dkt. 4 at ¶¶ 32, 36; Dkt. 11-1 at 6).  The Credit Agreement explicitly provides that "[i]n the event that Buyer fails to make payment when due, Buyer will pay, in addition to the invoice amount, a monthly late payment charge of 1.5%."  (Initial Action Dkt. 11-3 at ¶ 1).  The Court notes that New York law provides a statutory prejudgment interest rate of nine percent per year.  *See* CPLR 5004.  However, the Court of Appeals for the Second Circuit has explained that "it is well-established that when a contract provides for interest to be paid at a specified rate until the principal is paid, the contract rate of interest, rather than the legal rate set forth in CPLR 5004, governs until payment of the principal or until the contract is merged in a judgment."  *NML Capital v. Republic of Argentina*, 621 F.3d 230, 240 (2d Cir. 2010); *see also Sery v. Medina*, 13-CV-165 (RLE), 2015 WL 9450844, at *8 (S.D.N.Y Dec. 23, 2015).  Accordingly, as a legal matter, the Court finds it appropriate  to award prejudgment interest at the 1.5 percent rate provided for in the Credit Agreement.

However, Plaintiff's briefing regarding the calculation of interest is sufficiently unclear such that further briefing is necessary. "Where, as here, the damages were incurred at various times, interest would run from either 'the date it was incurred or upon all of the damages from a single reasonable intermediate date.'" *Voice Tele Servs. Inc. v. Blu-Dot Telecoms Ltd.*, 19-CV-5252 (JGK) (OTW), 2019 WL 6497507, at *3 (S.D.N.Y Dec. 2, 2019); *see* CPLR 5001(b). "Which date to use is up to the Court's discretion." *Id.* (citing *155 Henry Owners Corp. v. Lovlyn Realty Co.*, 231 A.D.2d 559, 560-61 (2d Dep't 1996)). Plaintiff has submitted 71 invoices that remain partially or fully unpaid. It appears from spreadsheets submitted as exhibits to the FAC and motion for default judgment that invoices are due on the tenth of the month following the invoice's issuance. (Initial Action Dkt. 4-2; Initial Action Dkt. 11-4; Dkt. 11-9). Invoices came due in nine separate months. (*See* Initial Action Dkt. 11-9). Although interest running from nine separate dates is relatively straightforward to calculate, Plaintiff has submitted several spreadsheets detailing late payments and interest calculations that are unclear for the purpose of calculating prejudgment interest. (Initial Action Dkt. 4-2; Dkt. 11-4; Dkt. 11-9).

For example, the account aging statement appended to the FAC and motion for default judgment (Initial Action Dkt. 4-2, Dkt. 11-4) lists transactions with late charges out of chronological order, such that the Court cannot determine how the stated late charges relate to the other amounts reflected in the statement. (*See* Initial Action Dkt. 4-2). Furthermore, the account aging statement shows interest accruing on the last day of each

month instead of the eleventh of each month (which would be consistent with invoices coming due on the tenth of each month).

Plaintiff has also submitted a spreadsheet with interest calculations arranged by month. (Initial Action Dkt 11-9). However, this spreadsheet also contains unclear damage calculations. For example, for invoices due on September 10, 2018, the spreadsheet calculates 27 months to have elapsed between that date and November 17, 2020. *See id.* However, only 26 full months elapsed between those dates. It is unclear whether Plaintiff's position is that the 1.5 percent penalty applies immediately on the first day the invoice payment is late, whether interest accrues after the first month elapses, or whether Plaintiff simply made a mistake.

With regard to the rate of post-judgment interest, the Second Circuit has instructed that "under [28 U.S.C.] § 1961, federal district courts must apply the federal rate of post-judgment interest to judgments rendered in diversity actions. . . ." *Cappiello v. ICD Publications, Inc.*, 720 F.3d 109, 112 (2d Cir. 2013). This statute sets the rate of post-judgment interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment[]" beginning from the date of the judgment. 28 U.S.C. § 1961. "[P]arties may by contract set a post-judgment rate at which interest shall be payable[.]" *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 101 (2d Cir. 2004). However, "in order to override the statutory interest rate the contract 'must actually indicate the parties' intent to deviate from § 1961.'" *HICA Educ. Loan Corp. v. Girard*, No. 7:11-CV-0595 LEK/TWD, 2012 WL 3241406, at *3 (N.D.N.Y.

Aug. 7, 2012) (quoting *Westinghouse*, 371 F.3d at 102).  Plaintiff has not addressed the applicability of 28 U.S.C. § 1961 in the request for post-judgment interest.  Accordingly, the Court does not possess sufficient information at this time to determine whether to apply the rate of interest set in the Credit Agreement or that set by 28 U.S.C. § 1961.

Because of the unclear briefing, the Court cannot calculate "with reasonable certainty" the amount of interest owed pursuant to the Credit Agreement at this time.  *See Voice Tele Servs.*, 2019 WL 6497507, at *2) (citing *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  Therefore, Plaintiff's request for pre- and post-judgment interest is denied without prejudice. Plaintiff may file a renewed motion for pre-and post-judgment interest within 30 days of the filing date of this Decision and Order. Any such renewed motion must set forth clearly the date on which Plaintiff contends the penalty first applies, update the interest calculations submitted with the motion for default judgment, and address the applicability of 28 U.S.C. § 1961 to the award of post- judgment interest.

### C.   <u>Attorney's Fees.</u>

Plaintiff seeks attorney's fees pursuant to the Credit Agreement, which provides that:

> Buyer agrees to pay all costs of collection by Seller of any amounts due hereunder, including actual attorneys' fees.  Buyer further agrees that, in the event any action arising out of or related to the Agreement between Buyer and Seller, and Seller prevails, Buyer will pay Seller its actual attorney's fees and other costs incurred as a result of or in connection with such action.

- 23 -

(Initial Action Dkt. 11-3 at ¶ 2). The personal guaranty signed by Ridsdale further provides that he agrees to pay "all costs of collection, legal expenses and attorney's fees paid or incurred by [Plaintiff] in the collection of [CR1's] indebtedness and in enforcing this [personal guaranty]." (Initial Action Dkt. 4-1 at 2).

"Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action on the contract is enforceable 'if the contractual language is sufficiently clear.'" *Cnty of Oswego Indus. Dev. Agency v. Fulton Cogeneration Assocs., LP*, 636 F. Supp. 2d 159, 179 (N.D.N.Y 2009) (quoting *NetJets*, 537 F.3d at 175). Although the second sentence of paragraph two of the Credit Agreement is ungrammatical, it is nevertheless sufficiently clear that CR1 agreed to pay Plaintiff actual attorney's fees in the event of "any action arising out of the Agreement between Buyer and Seller." (Initial Action Dkt. 11-3 at ¶ 2). It is further clear that Ridsdale personally agreed to pay for such attorney's fees. (*Id.*).

Under New York law, "when a contract provides for shifting of the actual attorneys' fees expended by a prevailing party, 'the court will order the losing party to pay whatever amounts have been expended so long as those amounts are not unreasonable.'" *Wells Fargo Bank N.W., N.A. v. Taca Int'l Airlines, S.A.*, 315 F. Supp. 2d 347, 353 (S.D.N.Y. 2003) (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987)). As the party seeking payment of attorney's fees, and in order to demonstrate the reasonableness of the fees sought, Plaintiff must "submit, at a minimum, information regarding counsel's professional experience, as well as contemporaneous billing records,

- 24 -

which must indicate the hourly rate billed and include information as to the work undertaken by counsel and the time spent on each task." *LG Capital Funding, LLC v. 5barz Int'l*, 307 F. Supp. 3d 84, 104 (E.D.N.Y. 2018). Plaintiff has not made such a submission here. Therefore, Plaintiff's request for attorney's fees is denied without prejudice. If Plaintiff wishes to file a renewed motion for attorney's fees, Plaintiff must do so within 30 days of this Decision and Order and must include at least the information set forth above.

### D.   Costs

Plaintiff seeks reimbursement for $146.40 in costs for service of summons and complaint. (Dkt 11. at 1; 11-1 at 1; 11-6 at 1). In the Credit Agreement, CR1 agreed to pay "all costs of collection by Seller of any amounts due hereunder[.]" (Initial Action Dkt. 11-3 at ¶ 2). Ridsdale also agreed to pay "all costs of collection, [and] legal expenses . . . incurred by [Plaintiff] in the collection of [CR1's] indebtedness and in enforcing this [personal guaranty]." (Initial Action Dkt. 4-1 at 2). The court finds that this cost is reasonable, and Plaintiff shall be awarded costs of $146.40.

### CONCLUSION

Based on the foregoing analysis, Plaintiff's motion for default judgment (Initial Action Dkt. 11) in the Initial Action is granted in part and denied in part. The Court finds that Plaintiff has established liability with respect to its first cause of action but denies the request for default judgment as to the second and third causes of action. Plaintiff is awarded $75,146.80 in damages and $146.40 in litigation costs for a total award of $75,293.20. Plaintiff's requests for attorney's fees and pre- and post-judgment interest are

denied without prejudice due to inadequate evidentiary support.  If Plaintiff wishes to file a supplemental motion for attorney's fees and pre- and post-judgment interest, it must do so within 30 days of this Decision and Order.  Any such supplemental motion must cure the deficiencies set forth in this Decision and Order.

Plaintiff's motion for default judgment (Guarantor Action Dkt. 7) in the Guarantor Action is denied, and the Clerk's Entry of Default entered in that action (Guarantor Action Dkt. 6) is vacated.

Plaintiff shall serve a copy of this Decision and Order on Defendants at their last known addresses and shall file proof of service of the same.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        September 30, 2021
              Rochester, New York